**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MAHMOUD ALILI, | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-00930 |
| v. | : | Judge Jeffery P. Hopkins |
| FORA FINANCIAL, LLC, *et al.*, | : | |
| *Defendants*. | : | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss filed by Defendant Mantis Funding, LLC (Doc. 4) ("Mantis Funding") and Defendant Fora Financial Business Loans, LLC[1] (Doc. 9) ("Fora Financial") filed January 22, 2026, and February 17, 2026, respectively. Plaintiff Mahmoud Alili ( "Plaintiff" or "Mr. Alili") failed to respond to either motion, and the time for filing responses has long passed.[2] For the reasons provided below, Defendants' Motions to Dismiss (Docs. 4, 9) are **GRANTED** and Plaintiff's Complaint (Compl., Doc. 1) is dismissed **WITHOUT PREJUDICE**.

---

1 Defendant Fora Financial Business Loans, LLC was misidentified in the Complaint (Compl., Doc. 1) as "Fora Financial LLC." *See* Doc. 9, PageID 44 n.1.

2 Though Mr. Alili failed to respond to Defendants' Motions to Dismiss, the Court has a duty still to examine the allegations contained in Mr. Alili's Complaint (Compl., Doc. 1) to determine whether they state a claim upon which relief may be granted. *Carver v. Bunch*, 946 F.2d 451, 452–55 (6th Cir. 1991) (finding abuse of discretion where the district court dismissed the plaintiff's complaint solely for his failure to respond to the defendant's motion to dismiss); *Bangura v. Hansen*, 434 F.3d 487, 497 (6th Cir. 2006).

## I. BACKGROUND[3]

On December 15, 2025, Mr. Alili, proceeding *pro se*, filed a Complaint in this Court asserting claims against Defendants Fora Financial and Mantis Funding (together, "Defendants"). Compl., Doc. 1. In the Complaint, Mr. Alili alleges that he is the owner of Stars Wireless and Smoke ("Stars and Smoke"), a limited liability company; that his former employee, Joseph Mahmoud, submitted an application to Fora Financial and Mantis Funding for loans in the company's name; the loans were fraudulently co-signed by Mr. Alili; and that those loans were later approved and paid out to his company. *Id.* After discovering the loans, Mr. Alili contacted Fora Financial and Mantis Funding to report the fraud and that the loans had been obtained without his permission. *Id.* Mr. Alili provided both lenders with documentation, including police reports, theft reports, and numerous letters, which he identifies as the "fraud packages." *Id.*

The gravamen of Mr. Alili's Complaint against Fora Financial and Mantis Funding is that both lenders failed to properly address his fraud claims. For instance, Mr. Alili states that a representative from Fora Financial said only that it "was plaintiff[']s responsibility to pursue Mr[.] Mahmoud." Mantis Funding likewise dismissed Mr. Alili's fraud claim as his responsibility. *Id.* Separately, Mr. Alili's Complaint alleges that Fora Financial obtained a New York state-court judgment against Stars and Smoke (and against him personally), but that he "has never properly been served" with respect to that action. *Id.* To add salt to the wounds, Mr. Alili asserts that Mantis Funding obtained a judgment or lien against his business accounts, which "has caused significant financial loss and business issues," including

---

[3] For purposes of analyzing a motion to dismiss, the Court views as true all factual allegations stated in the Complaint (Compl., Doc. 1). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

disruption of card and financial services, and that the collection actions have continued to this day. *Id*. In Mr. Alili's view, both Defendants' failure to "investigate claims of fraud their responses and subsequent legal actions and statements fail to meet their affirmative obligations" pursuant to several statutes, including the Fair Credit Reporting Act (15 U.S.C. § 1681), Equal Credit Opportunity Act (15 U.S.C. § 1691), and the Truth in Lending Act (citing, 15 U.S.C. § 1661).[4] *Id.*

## II. LEGAL STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process.

[4] The Truth in Lending Act defines the term "single advertisement" in the context of credit-card advertising regulations. *See* 15 U.S.C. § 1661. The statute provides, "[f]or the purposes of this part, a catalog or other multiple-page advertisement shall be considered a single advertisement if it clearly and conspicuously displays a credit terms table on which the information required to be stated under this part is clearly set forth." *Id*. As explained further below, Mr. Alili does not claim that Fora Financial or Mantis Funding issued any advertisement or credit-card offer, nor does he assert facts tying Defendants' conduct to any statutory requirements that fall within the ambit of § 1661's regulatory scheme.

"Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020). In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III. LAW AND ANALYSIS

In the Complaint (Compl., Doc. 1), Mr. Alili brings claims against Defendants under the Fair Credit Reporting Act, Equal Credit Opportunity Act, and Truth in Lending Act. The Court addresses each in turn.

### *1. Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681*

Mr. Alili contends that Defendants' handling of his fraud complaints and subsequent legal actions violated the FCRA. Compl., Doc. 1. This claim fails, however, because Mr. Alili's allegations are not covered by the statute. The FCRA was implemented in 1968 "to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant and up-to-date information in a confidential and responsible manner.'" *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843–44 (6th Cir. 2004) (quoting *Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 965 (6th Cir.1998)). Importantly, for our purposes, "[t]he FCRA imposes distinct obligations on three types of entities: (1) consumer reporting agencies[;] (2) users of consumer reports; and (3) furnishers

of information to consumer reporting agencies."[5] *Id.* Here, Mr. Alili has failed to plead that Fora Financial or Mantis Funding qualify under any one of the three types of entities. He makes no assertion in the Complaint that either company is a consumer reporting agency, user of consumer reports or furnisher of information, which is necessary for Mr. Alili to state a claim under the FCRA. *See Cheatham v. McCormick*, 100 F.3d 956 (6th Cir. 1996) (stating that the plaintiff in the action failed to show "at all that [the defendant] [wa]s a consumer reporting agency as defined by § 1681a(f)").

In addition, Mr. Alili asserts in the Complaint that the transactions at issue were business loans to Stars and Smoke, a limited liability company. Compl., Doc. 1. Indeed, Mr. Alili alleges that his former employee, Joseph Mahmoud, submitted an application in his name and his company's name to Fora Financial and Mantis Funding, and that the companies approved the application and issued fraudulent loans to Stars and Smoke. *Id*. But courts have consistently held that the FCRA does not typically regulate commercial or business credit transactions. *See Cheatham*, 100 F.3d at 956 ("The report at issue here was simply not the type of report to which the Fair Credit Reporting Act was intended to apply. Our sister circuits have rebuffed efforts, based on expansive interpretations of § 1681b, to extend the Act beyond its original purpose of *consumer* protection.") (emphasis added); *Lewis v. Experian Info. Sols., Inc.*, No. CIV.A. 04-88, 2006 WL 897198, at *2 (E.D. Ky. Apr. 3, 2006) ("It is well settled that the FCRA pertains to credit transactions for a consumer's personal

---

[5] The Court notes that the "term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). Additionally, a furnisher of information is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). Finally, 15 U.S.C. § 1681m imposes duties on "users of consumer reports" who take adverse actions in reliance on the information provided in consumer reports.

use."); *George v. Equifax Mortg. Servs.*, No. 06-cv-971 DLI LB, 2010 WL 3937308, at *2 (E.D.N.Y. Oct. 5, 2010) ("[I]t is well established that the FCRA does not apply to business or commercial transactions, even when a consumer's credit report impact such transactions."); *Cook v. Equifax Info. Sys., Inc.*, No. CIV. A. HAR 92-927, 1992 WL 356119, at *3 (D. Md. Nov. 20, 1992) ("[C]redit reports used to acquire commercial or business credit are not afforded the protection of the FCRA."); *Wisdom v. Wells Fargo Bank NA*, No. cv-10-2400-PHX-GMS, 2012 WL 170900, at *2 (D. Ariz. Jan. 20, 2012) (stating that the Act "does not provide for protection for business entities, and courts have held since its initial passage that 'both the legislative history of the Act and the official administrative interpretation of the statutory terminology involved compel the conclusion that the Act does not extend coverage to a consumer's business transactions'") (citation omitted).

Though Mr. Alili alleges that the loans were also co-signed in his name, the Complaint indicates that the credit sought was for Stars and Smoke, Plaintiff's limited liability company under its *business* account. Compl., Doc. 1. Mr. Alili's name was mentioned only because of his ownership of the business, rather than for his strictly personal use. *Id*. The Complaint further alleges that Mr. Alili's employee, Joseph Mahmoud, opened the purportedly fraudulent accounts, reinforcing that the alleged conduct arose in connection with Mr. Alili's business operations. *Id*. Accordingly, based on the allegations in the Complaint (Compl., Doc. 1), the alleged transactions are commercial in nature and fall outside of the FCRA. Thus, relief under the FCRA would be unavailable to Mr. Alili even if he had filed a response to Defendants' Motions to Dismiss.

### 2. *Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691*

The ECOA likewise does not provide Mr. Alili with a basis for relief. Congress enacted the ECOA in 1974 to prohibit discrimination in credit transactions, particularly against married women "whom creditors traditionally refused to consider for individual credit." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 771 (6th Cir. 2005); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016); *Dorton v. Kmart Corp.*, 229 F. Supp. 3d 612, 615 (E.D. Mich. 2017) ("The ECOA exists to prevent discrimination by creditors against certain classes of credit applicants.") (citing *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002)). The Act prohibits a creditor from discriminating against an "applicant . . . with respect to any aspect of a credit transaction" including, but not limited to, "race, color, religion, national origin, sex or marital status, or age . . .". 15 U.S.C. § 1691(a). For purposes of the ECOA,[6] "[t]he term 'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

However, Mr. Alili does not allege in the Complaint (Compl., Doc. 1) that Fora Financial or Mantis Funding denied him credit or took any adverse action with respect to Stars and Smoke. Similarly, Mr. Alili does not allege facts suggesting that either lender discriminated against him with respect to any credit transaction, as provided under the statute. He alleges only that a former employee fraudulently opened accounts in his company's name

[6] Pursuant to the ECOA, a "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). "Adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6); *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 835 (11th Cir. 2025).

(allegedly co-signed by him) and that Defendants refused to pursue his fraud claims. Compl., Doc. 1. Accepting Mr. Alili's allegations as true, as we must at this juncture, his claims do not fall within the scope of the ECOA, and he can make no plausible claim under it for relief.

*3. Truth in Lending Act ("TILA"), 15 U.S.C. § 1661*

Mr. Alili finally invokes § 1661 of the Truth in Lending Act. That provision governs disclosure requirements for consumer credit-card advertising and defines when a catalog or other multi-page advertisement qualifies as a "single advertisement" under the statute. *See* 15 U.S.C. § 1661 ("For the purposes of this part, a catalog or other multiple-page advertisement shall be considered a single advertisement if it clearly and conspicuously displays a credit terms table on which the information required to be stated under this part is clearly set forth."). But Mr. Alili's Complaint (Compl., Doc. 1) contains no allegations relating to any advertisement, catalog, or other multiple-page advertisement. He does not allege, for instance, that Fora Financial or Mantis Funding distributed any consumer credit advertisements to him or his company or that he was misled by such advertising in a way that implicates § 1661. Mr. Alili's allegations concern accounts opened through his business, his fraud reports, and Defendants' collection and litigation activities. Compl., Doc. 1. Therefore, Mr. Alili's claim under § 1661 fails to state a claim against either Defendant.

## IV. CONCLUSION

For all the foregoing reasons, the Motions to Dismiss filed by Mantis Funding, LLC (Doc. 4) and Fora Financial Business Loans, LLC (Doc. 9) are **GRANTED** and Mr. Alili's Complaint (Compl., Doc. 1) is dismissed **WITHOUT PREJUDICE**. The Clerk is instructed to **TERMINATE** this civil action from the Court's docket.

**IT IS SO ORDERED.**

August 25, 2026

Jeffery P. Hopkins
United States District Judge